UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

DARRYL M. GREENE,

        Defendant.

18-CR-57
DECISION AND ORDER

---

On July 2, 2019, a jury convicted the defendant, Darryl M. Greene, on one count of conspiracy and two counts of attempted possession of a controlled substance with intent to distribute it. *See* Docket Item 160 at 128-129. More specifically, the jury convicted Greene of conspiring to possess with intent to distribute, and to distribute, 500 grams or more of cocaine; attempting to possess with intent to distribute a kilogram package of cocaine on July 27, 2017; and attempting to possess with intent to distribute a half-kilogram package of cocaine on August 3, 2017. *See id.* at 81, 98-99, 128-129. Shortly after he was convicted, Greene submitted a document to the Court, *pro se*, complaining about his trial counsel. As a result, on September 6, 2019, the Court appointed a new attorney to represent Greene. *See* Docket Item 155.

On November 15, 2019, new counsel moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or, in the alternative, a new trial in the interest of justice under Federal Rule of Criminal Procedure 33. Docket Item 163. On December 6, 2019, the government responded, Docket Item 164, and on December 12, 2019, Greene replied, Docket Item 165. On December 20, 2019, this Court heard argument. *See* Docket Item 166.

Because the evidence was more than sufficient to convict, Greene's motion for a judgment of acquittal is denied. Moreover, because Greene has established neither that his trial counsel was ineffective nor that any of his attorney's alleged errors at trial might have impacted the jury verdict, his motion for a new trial is denied as well.

## **FACTS**

In July 2017, the United States Postal Service obtained a warrant to search a suspicious package addressed to David Hodge. Docket Item 158 at 69-71. Inside the package, investigators found approximately a kilogram of cocaine wrapped in two smaller equal parcels. *Id.* at 75-77, 89. The investigators replaced the real cocaine with sham cocaine and delivered the package under surveillance. *Id.* at 78-80.

Hodge, who had been anxiously waiting for the package, accepted delivery. *Id.* at 171-72. A short time later, Hodge gave the package to Greene, who had arrived at Hodge's residence driving a black GMC. *Id.* at 172-73. Drug Enforcement Administration ("DEA") officers then stopped the vehicle, recovered the package, and arrested Greene. *Id.* at 174. Hodge was arrested as well. *Id.* at 178-79.

Both Hodge and Greene gave the DEA consent to search their cell phones. *Id.* at 183-84. Greene also consented to a videotaped interview, during which he told the DEA that he did not know what was in the package but that he simply was doing a favor for Hodge by taking the package from him. *Id.* at 181-82; Government Exhibit 7.

About a week later, on August 3, 2017, the authorities intercepted a second package, this one addressed to "W. Greene" at the address where defendant Greene lived: 1631 Hertel Avenue in Buffalo, New York. Docket Item 159 at 34-35. Again, the

2

United States Postal Service obtained a warrant and searched the package. Docket Item 157 at 5-6. This time, investigators found a half-kilogram of cocaine. *Id.* at 6.

Both packages came from San Diego, California, with the sender listed as David Anderson. Docket Item 158 at 14-15, 71-72. Records from both Hodge's and Greene's cell phones included several text messages with a San Diego phone number. Docket Item 159 at 14-17. Those text messages discussed the delivery of the packages and included tracking information. *Id.* at 28-29, 32-33.

Text messages from Greene's phone to the San Diego phone number also addressed the need to keep their conversations discreet:

> You write, you open when you talk. And when I ask you to relax you get an attitude and go harder about what you trying to find out. It's like you don't have a discreet button when you talk. We don't know who listen in, conversation are too open. Like we don't know any better. Need to change that.
>
> . . .
>
> Open conversations in that manner should never be the phone. Look at the down fall of others (in my case, phone conversations) and you still not hearing what I'm saying.
>
> . . .
>
> I'm the dummy with one line, but you the dummy for talking reckless on my one line. It would matter, if I had 10 lines you still reckless with your conversation.

Government Exhibit 4a.

## **DISCUSSION**

### **I.    RULE 29**

A defendant seeking a judgment of acquittal faces a heavy burden. A court can grant a Rule 29 motion only if no rational jury could have found beyond a reasonable

3

doubt that the defendant was guilty. *See United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015). Stated another way "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *See United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White,* 673 F.2d 299, 301 (10th Cir. 1982)).

Here, the evidence was more than sufficient to convict. A short time after the first package of sham cocaine was delivered to Hodge, Greene drove to Hodge's residence and Hodge gave him the package. Indeed, Greene was in possession of the package when investigators stopped his car and arrested him a few minutes later. Moreover, a similar package was addressed and delivered to the building where Greene lived, with "W. Greene" as the addressee. And cell phones that Greene admitted were his contained text messages with tracking information related to both packages.

That evidence was more than enough to convince a reasonable jury beyond a reasonable doubt that Greene was guilty. Greene claims that he was unaware of the contents of the package, but the text messages with the tracking numbers suggest otherwise. Especially because there rarely is direct evidence of intent, *see United States v. Crowley*, 318 F.3d 401, 409 (2d Cir. 2003), a reasonable jury might well infer that Greene knew exactly what the mailed packages contained. And while the second package was addressed to "W. Greene"—a different first initial than the defendant's—the fact that it was addressed to the place where Greene lived, together with the related tracking information on Greene's phone, provided enough connection to convict Greene with respect to that package as well.

In sum, there was strong evidence connecting Greene to both packages and therefore to a narcotics conspiracy. The fact that Greene now asserts that he did not know what the packages contained—a refrain that is not uncommon from defendants who were caught red-handed—does not mean that the jury had to accept that assertion. Because a reasonable jury might well have found—and indeed did find—beyond a reasonable doubt that Greene was guilty of all three crimes charged, his Rule 29 motion is denied.

## II.  RULE 33

A court may grant a new trial under Federal Rule of Criminal Procedure 33 "if the interest of justice so requires." Fed. R. Civ. P. 33(a). Rule 33 confers broad discretion on a trial court to avert a miscarriage of justice, *see United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992), and a defendant may raise a claim of ineffective assistance of counsel under Rule 33, *see United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010).

In his Rule 33 motion, Greene claims that his counsel was ineffective in several ways. First, trial counsel used his opening statement to attack Hodge, expecting the government to call Hodge as a witness. The government did not call Hodge, however, and defense counsel could not find Hodge to subpoena him to testify during the trial. Greene argues that his trial attorney's assumption that the government would call Hodge, together with the failure to subpoena Hodge prior to trial, constituted ineffective assistance. Greene also argues that his attorney was ineffective in failing to ask for the redaction of prejudicial statements made during Greene's interview, as well as in failing to object to other inadmissible evidence.

5

"A defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." *Strickland v Washington*, 466 U.S. 668, 687-88 (1984). In this regard, "a reviewing court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound [legal] strategy.'" *Gaskin*, 364 F.3d at 468 (alteration in original) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689). If the defendant overcomes that burden and makes such a showing, he then must demontrate that counsel's failure prejudiced the outcome of the proceeding—in other words, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *Strickland*, 466 U.S. at 694; *see also Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009).

Here, Greene can meet neither of those prongs. Especially given the strong evidence of guilt addressed above, his Rule 33 motion is denied.

### A. Opening Statement

As Greene correctly notes in his Rule 33 motion, his trial attorney largely pointed the finger at Hodge in his opening statement. Hodge lived at the address where the first package was delivered, and he personally accepted the delivery himself. *See* Docket Item 157 at 8. The second package was delivered to the building where Greene lived,

6

but Hodge's mother also lived at that address. *Id.* at 9. So Hodge was connected to both packages.

Moreover, Hodge knew that the first package was on its way to him and anxiously awaited its delivery. *See id.* at 10-11. In fact, he went to the post office three times looking for the package the day before it was delivered. *Id.* at 10. What is more, Hodge had a long track record of "over 30 prior arrests [and] over 20 prior convictions" for, among other things, "fraud, lying, larceny, stealing, drug possession, [and] possession with intent to distribute." *Id.* at 12. So Hodge was the culprit, counsel argued, but for some reason the government decided to prosecute Greene.

At the conclusion of defense counsel's opening statement, the government indicated that while Hodge was on its witness list, the government did not plan to call him. *Id.* at 20-21. The next day, defense counsel expressed his surprise that the government was not planning to call Hodge; in fact, he said he "was blindsided yesterday by the fact that they're not going to" call Hodge as a witness. Docket Item 158 at 3-4. Defense counsel said that he was trying to locate Hodge and to serve him with a subpoena to testify. *Id.* But despite counsel's best efforts, and despite the Court's extending the trial to give counsel a few extra days to locate Hodge, those efforts were unsuccessful. *See, e.g.*, Docket Item 159 at 2, 74-75; Docket Item 160 at 2.

Greene now argues that his counsel's assuming that the government would call Hodge and therefore failing to subpoena him sooner constituted ineffective assistance and that counsel's error prejudiced him. But in light of what actually transpired at trial, his arguments miss the mark.

7

First, contrary to Greene's suggestion, his trial attorney's opening statement never told the jury that Hodge would testify. *See* Docket Item 157 at 8-18. Although defense counsel indeed pointed the finger at Hodge as being the reason that Greene was innocently involved with the two packages, there was little else that he could have done. The first package was delivered to Hodge who promptly gave it to Greene. The second package was delivered to someone with Greene's last name at Greene's residence. What is more, tracking information regarding both packages was found on Greene's phone. And during his interview, Greene told investigators that he simply was doing Hodge a favor when he took the first package from him. So the only plausible story that counsel could tell to defend his client was that Greene unwittingly became involved to help Hodge. His opening statement telling that story certainly did not constitute ineffective assistance of counsel.

Greene argues that because his trial attorney made factual assertions in his opening statement expecting Hodge to testify, Hodge's failure to testify rendered his attorney unable to "establish these claims with admissible evidence." *See* Docket Item 163 at 19. The flaw in this argument is that Greene's trial counsel indeed was able to establish much—if not all—of what he asserted in his opening statement through the government's other witnesses. And that may actually have been more effective than if Hodge had testified himself.

For example, the postal inspector testified that the first package was addressed to Hodge at 125 Kensington Avenue, Buffalo, New York, and that he handed the package to someone he later learned to be Hodge at that address. Docket Item 158 at 71, 110, 116. Hodge appeared to be waiting for the package, the inspector said. *Id.* at

8

110-111, 113. In fact, the DEA agent who was watching the delivery testified that Hodge had acted "in an anxious manner" and that he had appeared to be "clearly waiting for something." *Id.* at 171. Moreover, the postal inspector testified that Hodge had been at the post office the day before—three times—looking for the package. *Id.* at 119. After Hodge took delivery of the package, he went back into his house and changed his shirt, giving the DEA agent who was watching the impression that Hodge was "up to something." *Id.* at 133-34.

The same DEA agent testified that tracking information for the packages had been sent not only to Greene's phone but to Hodge's as well. *Id.* at 8, 12, 28-29. He admitted that the text messages between the California phone number and Greene's phone number mentioned Hodge. *See, e.g.*, *id.* at 27-28. He conceded that Hodge and Greene may well have been together when the text messages between Greene's phone and the California phone were sent and that it was "entirely possible" that Hodge simply asked to use Greene's phone so that Hodge could "search for these packages." *Id.* at 54-55. Indeed, counsel even elicited from the DEA agent that Hodge's mother lived in the same building as the defendant—the location where the second package was addressed. *Id.* at 51.

Defense counsel also was able to establish through the government's witnesses that Hodge was not to be believed, one of the assertions that counsel made during his opening statement. The DEA agent who detained Hodge after the first delivery testified that Hodge was not truthful with the DEA or on other occasions when he was interviewed. *Id.* at 183. In fact, counsel got the agent to admit that the government had planned to call Hodge as a witness but decided not to. Docket Item 159 at 51.

9

Although the DEA agent could not say why government attorneys chose not to call Hodge, he acknowledged that Hodge "was a liar" and that he believed Hodge "to be a liar" based on "inconsistent statements that [he had] made. Omissions that [he had] made. Evasive natures regarding the whole nature of the investigation." *Id.* at 51-52.

The DEA agent also testified that Hodge had a very long criminal history that included multiple felony convictions for criminal possession of narcotics with intent to distribute, fraud, larceny, and other offenses that both implicated Hodge's involvement with drug trafficking and suggested his dishonesty. *Id.* at 42-43. And the agent admitted that Hodge was the target of the investigation at the time of the first delivery and before he had ever heard Greene's name. *Id.* at 43.

In sum, defense counsel was able to establish virtually all the assertions made in his opening statement about Hodge through the government's witnesses. In fact, at the conclusion of the government's case, the Court observed that defense counsel had "gotten a lot out of the last witness" and wondered whether defense counsel might have changed his mind about wanting to call Hodge. *Id.* at 74.

In light of all that testimony about Hodge from the government's own witnesses, defense counsel may have had the best of both worlds: he was able to establish the assertions he made in his opening statement, and he had an empty chair to blame as the culprit. The fact that the jury nevertheless convicted Greene speaks more to the weight of the evidence against him than to the fact that Hodge did not testify.

### B. Failing to Make Objections

Greene also argues that his attorney was ineffective when he failed to object to certain inadmissible evidence. For example, he claims that his attorney should have

10

requested the redaction of his admission during his "31 minute videotape[d]" interview that he had previously been arrested "for drugs." See Docket Item 163 at 21.

The failure to lodge an objection is not ineffective assistance of counsel when there might have been a reasonable strategic reason for it. See Morrison v. McRae, 2011 WL 1085306, at *6 (W.D.N.Y. Mar. 21, 2011). Here, that certainly appears to be the case.

As noted above, counsel sought to blame Hodge for Greene's involvement with the two packages, even suggesting that Hodge may have used Greene's cell phone to communicate with the California co-conspirator who apparently sent the packages to Buffalo. That may well have been a wise strategic choice, but it opened the door to the fact that Greene had a prior criminal charge against him. More specifically, the text message exchange between Greene's cell phone and the California cell phone referenced the sender's prior "case, phone conversations" in an effort to encourage whoever was using the California cell phone to be more "discreet . . . when you talk." Government Exhibit 4a. Because defense counsel also established that Hodge had a prior criminal record involving drugs, the prosecution correctly argued that it was entitled to tell the jury that Greene also had a prior drug conviction; otherwise, there would be no context for the possibility that Greene, and not Hodge, might have sent the text message referring to "my case." See id.; see also Docket Item 159 at 61-62.

In fact, to avoid any prejudice to Greene from proof about his prior drug convictions, the parties stipulated that Greene had previously been convicted of a crime related to controlled substances. Id. at 63-64. After that stipulation was read to the jury, to underscore his point, defense counsel had the DEA agent concede that while Greene

11

admitted that the cell phones at issue were his phones, Greene "did not make any statements or any admissions about who else may have used them at any point in time." *Id.* at 65.

In other words, evidence of Greene's prior drug conviction was necessary to provide context for the text messages from Greene's phone. That context was made relevant by defense counsel's strategic choice to blame Hodge and to suggest that the text messages from Greene's phone may well have been sent when Hodge was using that phone with Greene's permission. That strategic choice seems to have been a sound one; indeed, as noted above, in light of the strong evidence implicating Greene, defense counsel had few options other than to blame Hodge for Greene's involvement. For that reason, defense counsel was not ineffective in stipulating that Greene had a prior conviction involving narcotics. Likewise, his failure to request that Greene's interview be redacted to remove his admission about his prior arrest "for drugs" was not ineffective assistance. And even if it was, any error was harmless.

Finally, Greene argues that his trial counsel provided ineffective assistance when he failed to object to what Greene characterizes as improper "expert testimony" from two government witnesses. *See* Docket Item 163 at 25-27. More specifically, he argues that the case agent was permitted to give expert testimony even though he was a fact witness and that the witness whom the government called as an expert gave testimony that was unduly prejudicial. Both those arguments are unavailing.

Greene first argues that his counsel should have objected to testimony by DEA Special Agent David Turner, who testified as a lay witness. More specifically, Greene contends that his counsel should have objected to Agent Turner's testimony that text

12

messages "indicated that [whoever were using the two cell phones] were involved in the drug conspiracy together and that they ultimately might be relatives," *id.* at 26-27 (quoting Docket Item 158 at 195), and that "Speed" was Hodge's nickname, *id.* at 27; *see also* Docket Item 159 at 12-13.

With respect to the first contention, while Agent Turner's testimony about whether the text messages suggested involvement in a narcotics conspiracy may well have been objectionable, it was a valid strategic choice for counsel to "decide[ ] not to draw attention to this matter during direct examination, but instead attack the testimony on cross examination." *See Eze v. Senkowski*, 321 F.3d 110, 131 (2d Cir. 2003). For example, defense counsel successfully elicited admissions on cross-examination that the text-message terms "cook" and "fluffy"—which Agent Turner had testified were drug-related—could also refer to "any number of [non-drug-related] things." *See* Docket Item 159 at 71-73. And as noted above, counsel also suggested that Hodge—not Greene—sent those text messages.

Defense counsel's decision not to object to testimony regarding Hodge's nickname, "Speed," also was a valid strategic choice. As explained earlier, the defense's strategy was to point the finger at Hodge. Rather than objecting to the link between the text messages and Hodge, defense counsel sought to distance Greene from those text messages. Again, defense counsel elicited on cross-examination that it was possible that Hodge used Greene's phones. And defense counsel did successfully object to other questions regarding the text messages, such as when Agent Turner testified that the text messages were referring to "[t]he package." *See id.* at 13

13

(sustaining defense counsel's objection that "what is this text message referring to?" called for speculation).[1]

Greene also argues that his counsel should have objected to the testimony of Special Agent Mark Falconetti—who testified as an expert witness—that a kilogram of cocaine would sell in Buffalo for approximately $30,000 to $35,000. Docket Item 163 at 27-28. According to Greene, "such testimony served to bolster the self-serving videotape statement of Agent Taylor, when he told the [d]efendant that the drugs found in the package were worth $35,000." *Id.* at 28. Thus, "[t]he reference to $35,000 only served to inflame the jury against the [d]efendant." *Id.*

But the street value of narcotics is an appropriate subject for testimony by an expert witness. *See, e.g.*, *United States v. Akinrosotu*, 101 F.3d 1393 (Table), 1996 WL 414458, at *1 (2d Cir. Jul. 25, 1996); *United States v. Yevakpor*, 419 F. Supp. 2d 242, 254 (N.D.N.Y. 2006). And although the consistency between the value placed on the package by the expert and another police officer may well have been harmful to Greene's case, "that does not equate with being *unduly* prejudicial, for purposes of exclusion under [Federal Rule of Evidence] 403." *United States v. Fazio*, No. S2 11 CR 873 KBF, 2012 WL 1203943, at *4 (S.D.N.Y. Apr. 11, 2012) (emphasis added), *aff'd*, 770 F.3d 160 (2d Cir. 2014); *see also id.* (explaining that while "[a]ll evidence which tends to prove guilt could be characterized as prejudicial, . . . [t]o constitute 'unduly prejudicial,' the prejudice that the defendants would suffer if the evidence is admitted

---

[1] The defendant also has not shown how his counsel's failure to lodge either of those objections ultimately harmed him given the evidence that those text messages included tracking information about parcels that contained a kilogram and a half-kilogram of cocaine.

14

must substantially outweigh its probative value" (quoting Fed. R. Evid. 403)). Here, the street value of the package was more probative than prejudicial and therefore did not run afoul of Rule 403.

For all those reasons, Greene's trial counsel was not ineffective. And even if he made some mistakes, those mistakes did not make a difference given the overwhelming evidence of guilt. Greene's Rule 33 motion is therefore denied.

## **CONCLUSION**

The government presented strong evidence that Greene was involved with two packages of cocaine sent from California to Buffalo. That evidence established both Greene's involvement in a drug conspiracy and his attempted possession of two packages containing a total of a kilogram and a half of cocaine.

In light of that strong evidence, defense counsel had little choice other than to blame the person who actually received the first of those two packages and gave it to the defendant. That trial strategy may have opened doors that defense counsel would have preferred to remain closed, and it ultimately proved unsuccessful. But it did not fall below the objectively reasonable standard that would make it ineffective assistance of counsel. And even if it did, it would not have affected the result in this case given the overwhelming evidence of Greene's guilt.

Greene is not entitled to a judgment of acquittal, nor is he entitled to a new trial. For all the above reasons, his Rule 29 motion is denied, and his Rule 33 motion is denied as well.

SO ORDERED.

Dated: February 27, 2020
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE