UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DARRYL M. GREENE,

      Petitioner,

  v.                                            18-CR-57-LJV-JJM
                                                22-CV-717-LJV
UNITED STATES OF AMERICA,          DECISION & ORDER

      Respondent.

───────────────────────────────

Before the Court are three motions filed by the pro se petitioner, Darryl M. Greene: (1) to correct his sentence under 28 U.S.C. § 2255, Docket Item 254;[1] (2) to preclude the government from responding to his section 2255 motion, Docket Items 260 and 262; and (3) to "[re]visit [his] motion to compel appeal counsel [sic] to surrender the case/work file in [this] action," Docket Item 261 (first alteration in original) (capitalization omitted).[2]  For the reasons that follow, this Court denies Greene's motions.

---

[1] Citations are to the criminal docket, 18-cr-57, and page numbers in docket citations refer to ECF pagination.

[2] Greene also moved for the Clerk of Court to release his criminal and civil docket sheets, Docket Items 270 and 271, and for a status report on his section 2255 motion, Docket Item 272.  Greene's motions for his docket sheets are granted, and the Clerk of Court shall mail Greene a copy of his criminal and civil docket sheets.  Greene's motion for a status report is denied as moot.

**BACKGROUND**

On July 2, 2019, a jury convicted Greene on one count of conspiracy and two counts of attempted possession of a controlled substance with intent to distribute it. *See* Docket Item 142. More specifically, the jury convicted Greene of conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine; attempting to possess with intent to distribute a package of cocaine on July 27, 2017; and attempting to possess with intent to distribute another package of cocaine on August 3, 2017. *See id.*; Docket Item 27.

This Court sentenced Greene to a total term of 120 months' imprisonment and eight years' supervised release, *see* Docket Item 175, and Greene appealed, Docket Item 180. On May 27, 2021, the Second Circuit affirmed Greene's conviction and sentence. *United States v. Greene*, 858 F. App'x 16 (2d Cir. 2021) (summary order). More than a year and three months later, on September 21, 2022, Greene moved under section 2255 to vacate his conviction. Docket Item 254.

**DISCUSSION**

**I.    MOTION TO PRECLUDE THE GOVERNMENT FROM RESPONDING**

Greene's motion to preclude the government from responding to his petition asserts that the government did not comply with the court-ordered deadline to respond by November 7, 2022. Docket Item 260 at 1; Docket Item 262 at 2.[3] But on December 8, 2022, this Court extended the government's deadline until February 6, 2023, Docket

---

[3] Greene appears to have filed two versions of the same motion.

Item 257, and the government filed its response by that deadline, *see* Docket Item 263. This Court therefore denies Greene's motion to preclude the government from responding.

## II.     MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255

Greene seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A court may dismiss a section 2255 petition without first conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief he seeks.  *Id.* § 2255(b).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for filing a section 2255 petition, which runs from "the date on which the judgment of conviction bec[ame] final."  28 U.S.C. § 2255(f)(1); *see Rabbani v. United States*, 156 F. Supp. 3d 396, 402 (W.D.N.Y. 2016).  When the petitioner has appealed the underlying conviction, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"—that is, "90 days after entry of the Court of Appeals' judgment."  *Rabbani*, 156 F. Supp. 3d at 402 (quoting *Davis v. United States*, 2014 WL 2587718, at *1, (W.D.N.Y. June 10, 2014)).

3

Here, Greene's conviction was affirmed by the Second Circuit on May 27, 2021. *Greene*, 858 F. App'x at 16-17.  Therefore, Greene's conviction became final 90 days after that date—that is, on August 25, 2021—and his deadline to file a section 2255 petition was one year later.[4]  Accordingly, Greene's section 2255 motion to vacate, filed on September 21, 2022, was untimely.[5]

### B. Equitable Tolling

"Equitable tolling is available for untimely petitions filed pursuant to AEDPA, but its application 'requires an extraordinary obstacle preventing the petitioner from complying with AEDPA's limitations period.'"  *Rabbani*, 156 F. Supp. 3d at 403 (internal citation omitted) (quoting *Rosa v. United States,* 785 F.3d 856, 861 n.5 (2d Cir. 2015)); *see Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001) ("To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable

---

[4] Although the Second Circuit's mandate was not issued until June 17, 2021, "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed and not from the issuance of the mandate." *Rabbani*, 156 F. Supp. 3d at 402 n.4 (W.D.N.Y. 2016) (quoting Rule 13.3 of The Supreme Court's Rules of Practice).

[5] In June 2022, Greene moved for an extension of time to file his section 2255 petition.  Docket Item 245.  As this Court explained in its order resolving that motion, because "a federal court lacks jurisdiction to consider timeliness of a section 2255 motion until it is actually filed, an extension may be granted only after an actual section 2255 petition is filed."  Docket Item 247 (alterations and internal quotation marks omitted) (quoting *Gonzalez v. United States*, 2018 WL 5023941, at *3 (S.D.N.Y. Oct. 17, 2018)).  This Court denied Greene's motion and instructed that if he "file[d] a section 2255 motion and s[ought] an extension of the limitations period, he should include both substantive grounds for the motion and equitable reasons for why the filing deadline should be tolled."  *Id.*  And this Court warned Greene that only "rare and exceptional circumstances warrant equitably tolling the limitations period."  *Id.* (internal quotation marks omitted) (quoting *Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001)).

4

diligence throughout the period he seeks to toll.'" (citation and internal quotation marks omitted)).  It is the petitioner's burden to demonstrate that equitable tolling applies.  *See Hizbullahankhamon*, 255 F.3d at 75.

"The Second Circuit Court of Appeals has 'set a high bar to deem circumstances sufficiently "extraordinary" to warrant equitable tolling.'"  *Rabbani*, 156 F. Supp. 3d at 403 (quoting *Dillon v. Conway,* 642 F.3d 358, 363 (2d Cir. 2011)).  "Whether a circumstance is 'extraordinary' for purposes of equitable tolling is determined by inquiring 'not how unusual the circumstance alleged . . . is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'"  *Johnson v. United States*, 2014 WL 4545845, at *5 (E.D.N.Y. Sept. 12, 2014) (alteration in original) (quoting *Diaz v. Kelly,* 515 F.3d 149, 154 (2d Cir. 2008)).  For example, the Second Circuit has held that "a delay in [a petitioner's] ability to get in contact with his attorney to request a copy of his trial transcripts and other documents, and the temporary withholding of those documents by the prison mail room . . . are far from extraordinary."  *Id.* (quoting *Rivera v. United States,* 448 F. App'x 145, 146 (2d Cir. 2011) (summary order)); *see also Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (explaining that "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," nor do "the usual problems inherent in being incarcerated . . . justify equitable tolling" (emphasis omitted)).

Moreover, even if a petitioner identifies "an extraordinary circumstance, [he also] must show that it prevented him from timely filing a [section] 2255 application, i.e., 'a causal relationship between the extraordinary circumstances . . . and the lateness of his

filing." *Johnson*, 2014 WL 4545845, at *6 (emphasis omitted) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). The petitioner cannot make such a showing if, "acting with reasonable diligence, [he] could have filed on time notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134.

In support of his request for tolling, Greene states that he has had "limited access to the facility's library as it contains seven (7) computer[]s, [of] which only three (3) are accessible to research legal and/or case law material, which is shared by fifty-one (51) inmates at the Loretto Federal Prison Camp."[6] Docket Item 253 at 1. Greene adds that "after waiting his turn, to access the computer, [he] is limited to only two (2) hours of research and then must wait a[] certain amount of time, before being able to return to wait his turn again." *Id.* at 2 (capitalization omitted).

Greene also says that he has made "several request[s]" to his appellate attorney "to provide [Greene] with a copy of his Case/Work File, since December 29, 2021[,] for the purpose of submitting [t]his [section] 2255 [m]otion." *Id.* But, Greene says, he "currently has yet to receive his Case/Work File." *Id.* More specifically, Greene says that this "Court notified [him] that [his appellate attorney] ha[d] mailed a copy of the requested case/work file on non-encrypted CDs to the Loretto Federal Prison Camp on or/about July 13, 2022,"[7] but Greene was unable "to retrieve said CDs from Loretto

---

[6] Greene submitted a motion for extension of time along with his section 2255 motion, Docket Item 253, which this Court denied without prejudice as moot, Docket Item 255. This Court will, however, consider the arguments made in that motion in support of Greene's request for tolling.

[7] On July 13, 2022, this Court issued the following text order:

Attorney Scott M. Green previously conducted "a good faith review of [his] District Court and Appellate files" and provided [Greene] with all documents [Greene] had not received previously. See Docket Item 235. This Court

6

Administration." *Id.* And, Greene says, when he finally was able to retrieve one CD, it was blank. Docket Item 261 at 2.

The government argues that "[n]o extraordinary circumstances existed in [this] case," Docket Item 263 at 8, and this Court agrees. As an initial matter, the caselaw is clear that "the usual problems inherent in being incarcerated"—such as shared computers and time limits on access about which Greene complains—"do not justify equitable tolling." *See Baldayaque*, 338 F.3d at 152.

Nor has Greene established that the materials he claims not to have received from his attorney warrant tolling. While "[e]gregious conduct on the part of a defendant's attorney, or intentional interference by prison personnel on the verge of a filing deadline, may qualify as sufficiently extraordinary," *see Rabbani*, 156 F. Supp. 3d at 403, neither of those circumstances is present here. Rather, the record demonstrates that Greene's attorney twice sent Greene the materials Greene

---

"acknowledge[d] . . . that Scott Green has provided [Greene] everything requested" and, therefore, denied [Greene]'s prior motion to compel (Docket Item 233) as moot. Docket Item 236. [Greene] nonetheless continues to move for an order requiring Attorney Green to produce additional documents from his file. In response to these motions, Attorney Green provided the defendant with a "disc containing all of [the defendant's] discovery work that has been provided to [Attorney Green] by [the defendant's] trial attorney" and indicated that if "there is any more material out there, [Attorney Green] do[es] not have it." *See* Docket Item 251. Accordingly, the defendant's motion to compel, Docket Item 248, as amended, Docket Item 249, is denied as moot. With respect to the defendant's motion for a copy of his criminal history report, Docket Item 250, the Court is unsure what the defendant seeks beyond his Presentence Investigation Report ("PSR"). The defendant should already have a copy of the PSR; as a courtesy, however, this Court has mailed him an additional copy. Accordingly, that motion is denied as well.

Docket Item 251.

7

requested. *See* Docket Item 251. And even if—as Greene claims—he ultimately did not receive certain materials, he fails to explain how those materials were necessary to complete his section 2255 petition. In fact, Greene filed his section 2255 petition despite not having received those materials. *See* Docket Item 253; *cf. United States v. Rodriguez*, 438 F. Supp. 2d 449, 453-54 (S.D.N.Y. 2006) (declining to equitably toll statute of limitations because "even assuming that prison officials intentionally (and wrongfully) confiscated and destroyed [the petitioner]'s legal papers, . . . [t]here [wa]s no discernible basis for concluding the unavailability of [the] legal papers prevented [the petitioner] from filing a timely motion based upon his asserted medical incompetence to stand trial").

Thus, Greene has not presented the sort of "rare and exceptional circumstances [that might] warrant equitably tolling the limitations period." *See Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001). Greene's section 2255 petition, Docket Item 254, therefore is deemed untimely, and Greene's motion to revisit his motion to compel, Docket Item 261, is denied as moot.

But even if the Court were to consider the merits, it still would deny Greene's petition. As the government observes, all of Greene's claims are procedurally barred, fail on the merits, or both. *See* Docket Item 263. So even if Greene had filed a timely petition, it would be denied for the reasons that follow.

    **C.    Merits**

        **1.    Unlawful Search and Fraud on the Court**

Greene first claims that the government unlawfully searched his cell phones and forged his signature on the consent forms. Docket Item 254 at 4-6, 13-14. The

government argues that these claims are procedurally defaulted. *See* Docket Item 263 at 9-10. This Court agrees.

"A motion under [section] 2255 is not a substitute for an appeal." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998) (quoting *United States v. Munoz,* 143 F.3d 632, 637 (2d Cir. 1998)). "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a [section] 2255 motion only if the defendant can demonstrate either: (1) 'cause for failing to raise the issue, and prejudice resulting therefrom,' or (2) 'actual innocence.'" *Id.* (internal citation omitted) (first quoting *Douglas v. United States*, 13 F.3d 43, 46 (2d Cir. 1993); and then quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Greene argues that he did not raise these issues on direct appeal because he "was not consulted by appellate counsel regarding th[ese] issues nor allowed to view the appeal prior to its filing." Docket Item 254 at 4-5. He further states that he was "[m]isled to believe that" the issues had to be raised in a section 2255 petition. *Id.* at 5-6.[8]

Even assuming for the sake of argument that Greene has demonstrated cause for not raising these issues on direct appeal, he has failed to show prejudice. As the government observes, "[t]here was overwhelming evidence that Greene was involved in the conspiracy regardless of the data from the cell phones." *See* Docket Item 263 at 10-11; *see also United States v. Greene*, 2020 WL 947928, at *2 (W.D.N.Y. Feb. 27, 2020) (this Court's finding that "the evidence was more than sufficient to convict"), *aff'd*, 858 F. App'x 16 (2d Cir. 2021). For example, "[a] short time after the first package of

---

[8] Greene makes no claim of actual innocence. *See* Docket Item 254 at 4-10.

sham cocaine was delivered to [Greene's co-conspirator, David] Hodge, Greene drove to Hodge's residence and Hodge gave him the package." *Greene*, 2020 WL 947928, at *2. "Indeed, Greene was in possession of the package when investigators stopped his car and arrested him a few minutes later." *Id.* "Moreover, a similar package was addressed and delivered to the building where Greene lived, with 'W. Greene' as the addressee." *Id.* So in light of that overwhelming evidence, the evidence from Greene's cell phone added little to the equation, and Greene has failed to show prejudice. *See Fiumara v. United States*, 727 F.2d 209, 213-14 (2d Cir. 1984) (finding no prejudice where evidence that the petitioner claimed was illegally obtained was "only a small part of the overwhelming proof against [him]").

Greene's section 2255 claims regarding suppression and "fraud on the court" therefore lack merit.

### 2. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must "(1) demonstrate that . . . counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (internal citation omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 693 (1984)). District courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697; *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at

689.  The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.  In considering whether counsel "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 688-89.  Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Greene alleges that his defense attorney was ineffective because the attorney (1) did not move to suppress the cell phone evidence and "misrepresented to the Court that [Greene] had in fact granted consent to the cell phone search"; (2) failed to call the government's "key informant"—Hodge—as a witness after the government chose not to call him; and (3) had a conflict of interest.  Docket Item 254 at 16-20.

With respect to the cell phone search, as explained above, Greene has failed to establish prejudice based on the admission of that evidence.  *See supra,* Section II.C.1.  Thus, he cannot establish ineffective assistance of counsel on that basis.  *See Strickland*, 466 U.S. at 697.

With respect to Greene's attorney's decision not to call Hodge as a witness, it is well settled that the "decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense

11

attorneys in almost every trial." *See Aller v. United States*, 2015 WL 1963611, at *7 (S.D.N.Y. April 30, 2015) (citing *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999)), *aff'd*, 646 F. App'x. 21 (2d Cir. 2016). For that reason, "counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation,'" *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (quoting *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)), and "does not satisfy the standard for ineffective assistance of counsel," *see United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002); *see also Whitfield v. Bennett*, 2007 WL 3232499, at *5 (W.D.N.Y. Oct. 31, 2007) (explaining that "[g]iven the inherently tactical nature of the decision not to call a particular witness, the Second Circuit generally has refrained from disturbing such choices by trial counsel").

This is particularly true here where the witness in question was a government informant. Just because the government chose not to call Hodge does not mean that he would have been a good witness for the defense. On the contrary, there is every reason to believe that calling Hodge would have been risky and that choosing not to do so was sound strategy. What is more, as this Court previously observed, "[i]n light of [the] testimony about Hodge from the government's own witnesses, defense counsel may have had the best of both worlds" by not calling him: he still "was able to establish the assertions he made in his opening statement, and he had an empty chair to blame as the culprit." *Greene*, 2020 WL 947928, at *5.

Finally, Greene has not established that his trial attorney had any conflict of interest. Greene appears to argue that the conflict arose because the attorney failed to move to suppress and "misl[ed]" the Court about the authenticity of Greene's consent

12

form.  *See* Docket Item 254 at 20.  He adds that the attorney moved "to withdraw as counsel o[n] the eve of trial, attesting to a divergence of interest."  *Id.* (arguing that "[c]ounsel's interests over-rode [Greene's interests] to the extent that [counsel] sought to withdraw, rather than to reconcile with the course of action agreed to upon his hiring").  But those observations and assertions do not suggest any conflict.

"The right to the effective assistance of counsel . . . includes the right to be represented by an attorney who is free from conflicts of interest."  *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003).  "This right may be violated if the attorney has '(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance.'"  *Id.* (alterations in original) (quoting *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994)).  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the] defendant's interests diverge with respect to a material factual or legal issue or to a course of action."  *Id.* (quoting *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002)).  "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'"  *Id.* (quoting *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).

Here, there is no basis to find that Greene's attorney had any conflict of interest.  As explained above, there is no indication—other than Greene's say so—that the consent form was forged.  So there was no reason for the attorney to argue that it was, and any such argument many well have done more harm than good.  And even if that were not so, the failure to raise an argument does not suggest a conflict of interest.  *See*

13

*Ferreiras v. United States*, 895 F. Supp. 2d 504, 512 (E.D.N.Y. 2012) ("Merely asserting a conflict, without more, is insufficient.").

Nor did Greene's attorney's motion to withdraw suggest any conflict. *See generally* Docket Item 125. Rather, Greene's attorney simply stated that "[t]here continue[d] to be disagreements between . . . Greene and [his attorney] about various aspects of the case" and that "[b]ecause of the complete breakdown in the attorney client relationship, [the attorney could] no longer provide effective representation to him." *Id.* at ¶ 17. This Court then appointed another attorney as independent *Curcio* counsel to meet with Greene about the issues identified in the motion to withdraw. Docket Item 127; *see United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). Following that meeting, *Curcio* counsel reported to the Court that Greene's relationship with his trial attorney "was salvageable," and Green opted to proceed to trial with that attorney. Docket Item 127.

In other words, it appears that—as often happens—Greene and his lawyer disagreed about trial strategy but ultimately were able to reconcile their relationship. And that does not raise any conflict of interest.

For all those reasons, Greene's counsel was not ineffective.

## **CONCLUSION**

For the reasons set forth above, Greene's motion to vacate his sentence under 28 U.S.C. § 2255, Docket Item 254, is DENIED. His petition in W.D.N.Y. Docket No. 22-cv-717 is DISMISSED; and the Clerk of Court shall close that case. Greene's motion to preclude the government from responding to his section 2255 motion, Docket Items 260 and 262, is DENIED; his motion to revisit his motion to compel, Docket Item

261, is DENIED AS MOOT; his motions for the Clerk of Court to release his criminal and civil docket sheets, Docket Items 270 and 271, are GRANTED, and the Clerk of Court shall mail Greene a copy of his criminal and civil docket sheets; his motion for a status report on his section 2255 motion, Docket Item 272, is DENIED AS MOOT.

This Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962). The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

Greene must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of this decision and order. *See Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   January 8, 2025
         Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE